IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SAMUEL MONTANO                        §
(TDCJ No. 1732141),                   §
                                      §
              Petitioner,             §
                                      §
V.                                    §        No. 3:14-cv-1556-L-BN
                                      §
WILLIAM STEPHENS, Director,           §
Texas Department of Criminal Justice, §
Correctional Institutions Division,   §
                                      §
              Respondent.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Samuel Montano ("Montano"), a Texas prisoner, proceeding *pro se*,

has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His

petition should be denied for the reasons explained below.

**Background**

The factual and procedural background related to Montano's state convictions,

leading up to his direct appeal of those convictions, is explained fully in the Dallas

Court of Appeals's decision:

> Montano was charged by separate indictments with two counts of
> aggravated sexual assault of a child under 14 in trial court cause
> numbers F10-53865-X and F11-00223-X. Montano pleaded not guilty and
> elected a trial by jury in cause number F10-53865-X. After a jury was
> selected, Montano withdrew his not guilty plea, entered a plea of guilty,
> and elected to have the jury assess his punishment. That same day
> Montano entered an open plea of guilty in cause number F11-00223-X.
> The trial judge found Montano guilty and carried cause number F11-
> 00223-X until the jury assessed punishment in cause number F10-53865-

> X. The trial judge and both parties agreed the trial judge would render a sentence in cause number F11-00223-X that would be the same as the jury's punishment verdict in cause number F10-53865-X, with the sentences to run concurrently, in exchange for withdrawal of Montano's objection to evidence from cause number F11-00223-X being presented to the jury.
>
> Following the presentation of punishment evidence, the jury sentenced Montano to 99 years' confinement and a $10,000 fine in cause number F10-53865-X. The trial judge then rendered the same sentence in cause number F11-00223-X. Montano's trial counsel filed motions for new trial in each case, alleging that the verdict and sentences were contrary to the law and evidence. Montano's appellate counsel filed amended motions for new trial in each case, alleging ineffective assistance of trial counsel because he allegedly did not effectively communicate with Montano in cause number F11-00223-X and Montano's guilty plea was not made knowingly and voluntarily in cause number F10-53865-X. The issue of trial counsel's failure to object to hearsay testimony raised on appeal was not addressed in the trial court. The trial court heard evidence regarding the motions, but Montano's trial counsel was not called to testify. The motions were denied.

*Montano v. State*, Nos. 05-11-01643-CR & 05-11-01644-CR, 2012 WL 5898075, at *1

(Tex. App. – Dallas Nov. 21, 2012, no pet.).

The Dallas Court of Appeals denied Montano's claim of ineffective assistance of

trial counsel – the only claim raised on direct appeal – and affirmed the trial court's

judgments. *See id.* at *4. Montano was granted an extension of time to file a petition

for discretionary review but failed to do so. *See Montano v. State*, PD-1696-12 &

PD-1697-12 (Tex. Crim. App.).

The Section 2254 application in this case concerns state trial court case number

F10-53865-X. In his state habeas application pertaining to this conviction, Montano

raised a claim of ineffective assistance of trial counsel – that counsel failed to

communicate with him due to a language barrier – and a claim that the trial court

"accepted [his] guilty plea without an affirmation showing the plea was voluntary and intelligently made." *Montano v. Stephens*, No. 3:14-cv-1441-M-BN (N.D. Tex.), Dkt. No. 21-13 at 9-12.[1] The state trial court found there to be no controverted, previously unresolved factual issues requiring a hearing, on February 20, 2014, *see id.* at 69, and the Texas Court of Criminal Appeals denied the application without written order, *see Ex parte Montano*, WR-81,077-01 (Tex. Crim. App. Apr. 9, 2014); No. 3:14-cv-1441-M-BN (N.D. Tex.), Dkt. No. 21-12.

Through this Section 2254 application, Montano reasserts the claims presented to the state habeas court [Grounds 1 and 2] and also asserts (1) that he has been subjected to "double jeopardy" "because he was convicted twice of the same offense resulting from the same criminal transaction" [Ground 3] and (2) that he was denied the effective assistance of counsel "because an unauthorized agreement was executed without [his] participation or consultation" [Ground 4]. Dkt. No. 3 at 6-7. Montano freely admits that "Ground three and four are presented for the first time in this petition because [he] ... was only able to purchase the clerks and reporters' records after his state habeas petition had been submitted to the state courts." *Id.* at 8.

## Procedural Bar [Grounds 3 and 4]

A habeas petitioner must fully exhaust state remedies before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally

---

[1] The state court records pertaining to state trial court case number F10-53865-X were filed in Montano's first-filed Section 2254 action.

correct manner. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989). In Texas, a prisoner must present each claim to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for state post-conviction relief. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986). As the United States Court of Appeals for the Fifth Circuit recently explained,

> [t]he exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and "a desire to protect the state courts' role in the enforcement of federal law." *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (internal quotation marks omitted) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). To satisfy these important purposes, a petitioner must "fairly present[]" his legal claim to the highest state court in a procedurally proper manner. *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004). The state courts must be apprised of the constitutional foundation of the claim. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). Finally, "'[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'" *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam)). Consequently, "'where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement.'" *Id.* (quoting *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983)).

*Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *see also Neville v. Dretke*, 423 F.3d 474, 479 (5th Cir. 2005) (holding unexhausted claims ineligible for stay when state court would find them

procedurally barred).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Montano's "double jeopardy" claim [Ground 3] and his ineffective-assistance-of-trial-counsel ("IATC") concerning the allegedly unlawful agreement [Ground 4] are unexhausted and procedurally barred. Montano has neither shown that either claim would be allowed in a subsequent habeas proceeding in state court under Texas law nor asserted the "fundamental miscarriage of justice" exception to procedural bar.

He cannot, moreover, use a conclusory claim that indigence prevented him from

asserting these two claims in his state court habeas application to demonstrate cause to excuse his procedural default. *See* Dkt. No. 3 at 8 (he "was only able to purchase the clerks and reporters' record[ – presumably required to discover that these claims existed – ]after his state habeas petition had been submitted"). "[I]t is well established that neither indigence nor *pro se* status constitutes cause for a petitioner's procedural default." *Garcia v. Quarterman*, Civ. A. No. H-06-0775, 2006 WL 3254520, at *14 (S.D. Tex. Nov. 9, 2006) (citation omitted); *cf. Snyder v. Johnson*, No. 4:00-cv-1557-Y, 2001 WL 880703, at *4 (N.D. Tex. July 24, 2001) ("In an attempt to overcome the procedural default, Snyder appears to allege that he attempted unsuccessfully to obtain a copy of the state court record and was thereby prevented from fully pursuing state relief. Although Snyder asserts that he attempted to obtain the state court records, he has not supported this assertion with copies of any letters or pleadings demonstrating his efforts to obtain the state court records. Thus, Snyder's contention is wholly conclusory with no substantiation in the record whatever, other than Snyder's statements in his petition and supporting Memorandum of Law indigence." (footnotes omitted)).

But the limited exception to procedural bar for IATC claims created in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), found applicable to Texas cases in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), arguably could apply if Montano's procedurally-barred IATC claim [Ground 4] was substantial. For the reasons discussed below, however, the *Martinez/Trevino* exception to procedural bar does not apply here because Montano has not shown that the procedurally-barred IATC claim is substantial.

"In *Martinez*, the Supreme Court held,

> Where, under state law, claims of ineffective assistance of
> trial counsel must be raised in an initial-review collateral
> proceeding, a procedural default will not bar a federal
> habeas court from hearing a substantial claim of ineffective
> assistance at trial if, in the initial-review collateral
> proceeding, there was no counsel or counsel in that
> proceeding was ineffective.
>
> 132 S. Ct. at 1320. In 2013, the Supreme Court confirmed that *Martinez*
> applied to Texas prisoners who technically had the ability to bring their
> IAC claim on direct appeal of their conviction, but for all intents and
> purposes had to bring it in their first habeas petition.

*Crutsinger v. Stephens*, 576 F. App'x 422, 430 (5th Cir. 2014) (per curiam) (citing

*Trevino*, 133 S. Ct. at 1921); *see also Adams v. Stephens*, No. 4:14-cv-395-O, 2015 WL

5459646, at *4 (N.D. Tex. Sept. 17, 2015) ("*Trevino* recognizes that no counsel or

ineffective counsel at the first state collateral review proceeding can constitute 'cause'

to excuse a habeas petitioner's procedural default of a claim. *Trevino* merely

established an exception to the procedural default rule...." (citation omitted)).

The narrow *Martinez*/*Trevino* exception to procedural bar only applies if a

petitioner can show that the IATC claim presented is "substantial – that is, that it has

'some merit.'" *Cutsinger*, 576 F. App'x at 430 (quoting *Martinez*, 132 S. Ct. at 1318); *see*

*id.* (noting that, "if a petitioner's IAC claim is not substantial enough to earn a

[certificate of appealability], it is also not substantial enough to form the basis for

excusing the procedural default" (citing *Martinez*, 132 S. Ct. at 1318-19 (in turn citing

*Miller-El v. Cockrell*, 537 U.S. 322 (2003)))); *see also Speer v. Stephens*, 781 F.3d 784,

785 & n.4 (5th Cir. 2015) (noting the "limited nature" and "narrowness" of the

exception (citing *Martinez*, 132 S. Ct. at 1320; *Trevino*, 133 S. Ct. at 1922 (Roberts,

C.J., dissenting) ("We were unusually explicit about the narrowness of our decision [in *Martinez*].")); *Garcia v. Director, TDCJ-CID*, 73 F. Supp. 3d 693, 754-55 (E.D. Tex. 2014) ("[T]he Supreme Court opened the door slightly for a showing of cause and prejudice to excuse the default in *Martinez v. Ryan* ... and *Trevino v. Thaler*....").

Consistent with this authority – holding the substantiality that Montano must show equivalent to the substantiality that must be shown to earn a COA – and because Montano was *pro se* in the "initial-review collateral proceeding," the undersigned has reviewed the procedurally-barred IATC claim set out in the Section 2254 application, *see* Dkt. No. 3 at 6-7, under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether he has "demonstrate[d] that reasonable jurists would debate 'whether the petition states a valid claim of the denial of a constitutional right,'" *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 478, 484 (2000)) (citations omitted). And Montano has not shown that the procedurally-barred IATC claim he asserts is substantial. That is, he has not demonstrated that reasonable jurists would debate either that the performance of trial counsel fell below an objective standard of reasonableness or, assuming that performance did, that Montano was prejudiced by trial counsel's substandard performance such that he was deprived "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *see id.* at 687-88, 692.

The state court records simply disprove this IATC claim. For example, the transcript of Montano's guilty plea hearing in state trial court number F11-00223-X reflects both that he was represented by counsel in that proceeding and – more to the

point – that Montano understood the agreement with the prosecution resulting in evidence from that proceeding being used in state trial court case number F10-53865-X:

> THE COURT: I believe that was the agreement back in Court's chambers, that I would accept the open plea on the oral sex case. I would give him the same sentence that the jury gives on the sexual intercourse case. I would run them concurrent.
>
> And in exchange for that, I understand that you and the State agree there will be no objection to that oral sex evidence going before the jury; is that correct?
>
> MR. RINK: Yes, Your Honor.
>
> THE COURT: Is that your agreement, Ms. Kelly?
>
> MS. KELLY: That is correct, Your Honor.
>
> THE COURT: Is there anything else we need to put on the record before I bring the jury in?
>
> MS. KELLY: Yes, Your Honor. I believe Mr. Rink and I have agreed on stipulating to the chain of custody so that we can eliminate some of the lengthy witnesses, and also to the qualifications of the experts in this case.
>
> THE COURT: Is that correct, Mr. Rink?
>
> MR. RINK: Yes, Your Honor.
>
> THE COURT: The Court will certainly honor that agreement. I do appreciate y'all shortening the hearing. All right. As I said, the Court finds the Defendant guilty. I will postpone punishment until we hear the jury verdict. Mr. Montano, do you have any questions?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: You understand what we're doing, don't you?
>
> THE DEFENDANT: Yes.

THE COURT: The jury is going to hear about everything that happened on that day between you and your stepdaughter, and then they're going to decide your punishment. Then I will give you the same punishment in the oral sex case. That's the agreement. Is that your understanding?

THE DEFENDANT: That's what I understood.

THE COURT: The Court is satisfied that the Defendant is changing his plea of not guilty to guilty freely and voluntarily. I have no evidence that he is not competent. The Court will accept the change of plea.

No. 3:14-cv-1441-M-BN, Dkt. No. 21-1 at 67-68.

## Merits [Ground 1 and 2]

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the TCCA on direct appeal was an "issue … adjudicated on the merits in state proceedings," to be "examine[d] … with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012) ("Because all of Campbell's

claims regarding ineffective assistance were adjudicated on the merits by the Ohio state courts either during direct appeal or on post-conviction review, § 2254(d) governs our standard of review." (citation omitted)); *cf. Pugh v. Warden, La. State Penitentiary*, No. 11-cv-2184, 2015 WL 1508434, at *3 (W.D. La. Mar. 30, 2015) ("The State asserts a procedural bar defense to this claim, and it probably has merit. It is easier, however, to address the claim on the merits since it was adjudicated on the merits on direct appeal and, therefore, entitled to a deference under Section 2254(d).").

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more

general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state

court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

Guilty Plea [Ground 1]

> Montano argues that
>
> [t]he trial court's inquiry was insufficient when discussing the open-guilty plea and potential severity of the consequences if petitioner entered an open-guilty plea. Because (1) the trial court was aware of the overwhelming evidence against petitioner and how heinous a jury would perceive this offense; and (2) the trial court was aware of the State's reasonable plea offer available to petitioner.

Dkt. No. 3 at 6.

A guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

The United States Court of Appeals for the Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) the defendant's full understanding of the charges; and (3) the defendant's realistic appreciation of the

consequences of the plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). These core concerns are addressed by the admonishments contained in article 26.13 of the Texas Code of Criminal Procedure. *See, e.g.*, *Ojena v. Thaler*, No. 3:10-cv-2601-P-BD, 2011 WL 4048514, at *1 & n. 1 (N.D. Tex. Aug. 25, 2011), *rec. adopted*, 2011 WL 4056162 (N.D. Tex. Sept. 12, 2011).

As set out above, in this state criminal case (cause number F10-53865-X), Montano withdrew his not guilty plea and entered a plea of guilty, electing to have the jury assess his punishment:

> THE COURT: Are you changing your plea from not guilty to guilty freely and voluntarily?

> THE DEFENDANT: That's right.

> THE COURT: Do you understand there is no plea bargain in this case, meaning the jury will still determine the appropriate punishment?

> THE DEFENDANT: That's right.

> THE COURT: Do you understand the jury can still set punishment anywhere between the minimum of 5 years all the way up to 99 years or life?

> THE DEFENDANT: That's right.

> THE COURT: I am going to inform the jury that you have changed your plea to guilty. I will then tell the jury that they must find you guilty, based on your plea of guilty. Do you understand that?

> THE DEFENDANT: Yes, I do.

> THE COURT: So again, are you pleading guilty -- excuse me, let me back up. Are you changing your plea from not guilty to guilty freely and voluntarily?

> THE DEFENDANT: That's right.

> THE COURT: And do you understand that I will be telling the jury to find you guilty?
>
> THE DEFENDANT: Very well.
>
> THE COURT: And you know there's no chance of the jury finding you not guilty if we do this?
>
> THE DEFENDANT: Yes.

No. 3:14-cv-1441-M-BN, Dkt. No. 21-13 at 60-62.

These representations by a defendant during plea proceedings carry a strong presumption of verity. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *cf. Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985) (official documents, such as a written plea agreement, "are entitled to a presumption of regularity and are accorded great evidentiary weight").

Furthermore, the Dallas Court of Appeals made the following findings applicable to Montano's claim that his guilty plea was involuntary:

> The record is silent as to the extent of Montano's ability to understand English. Nor does the record reflect that Montano asked any questions during the trial court proceedings or otherwise indicated he did not understand the proceedings. Rather, the record shows the trial court used a licensed interpreter to explain the proceedings to Montano and thoroughly questioned Montano regarding the voluntariness of the plea, the applicable sentence range, the effect of a guilty plea on citizenship, and the implications of sex offender status.

*Montano*, 2012 WL 5898075, at *3.

Montano has not, therefore, overcome the strong presumption of verity that attached to his prior representations and he has not shown that the prior adjudication of this issue is contrary to established federal law or unreasonable in light of the facts

of his case. The Court should deny Montano's claim that his guilty plea in cause number F10-53865-X was not entered voluntarily, knowingly, and intelligently.

IATC [Ground 2]

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746,

-17-

752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1403, 1410 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, the AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.

Montano's claim concerning the alleged "comprehension problem between himself and trial counsel," Dkt. No. 3 at 6, was addressed by the Dallas Court of Appeal on direct appeal:

Montano argues his counsel provided ineffective assistance due to the fact that he speaks very little English and his trial counsel does not speak or understand "much Spanish." Montano contends the language barrier prevented him from understanding the proceedings. Accordingly, he claims his plea was not voluntary. The record is silent as to the extent of Montano's ability to understand English. Nor does the record reflect that Montano asked any questions during the trial court proceedings or otherwise indicated he did not understand the proceedings. Rather, the record shows the trial court used a licensed interpreter to explain the proceedings to Montano and thoroughly questioned Montano regarding the voluntariness of the plea, the applicable sentence range, the effect of a guilty plea on citizenship, and the implications of sex offender status. Moreover, the punishment hearing record shows that when the interpreter was unable to translate the Spanish word "camote" from Spanish to English, Montano's trial counsel offered the correct English translation....

On this record, we conclude Montano has failed to satisfy the first prong of the *Strickland* test because he did not "affirmatively demonstrate [ ] in the trial record ... that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." Further, even assuming Montano's allegations reflected deficiencies of counsel to meet the *Strickland* test, Montano did not "'show that there [wa]s a reasonable probability that, but for counsel's unprofessional errors,' ... he would not have pleaded guilty and would have insisted on going to trial." We resolve his sole issue against him.

*Montano*, 2012 WL 5898075, at *3-*4 (citations omitted).

Montano "has not met his burden to show that the state ... court's conclusion on this claim amounted to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2))). And the Court should therefore deny him relief on this IATC claim.

## Recommendation

Montano's application for a writ of habeas corpus should be denied.

-20-

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 13, 2015

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE